

Loan#

**LOAN MODIFICATION AGREEMENT**
**FIXED RATE PLAN & ACTIVE BK-13 PAYMENT PLAN**

This Loan Modification Agreement ("Agreement"), on Monday, November 12, 2018 between
   **Carol Gilkey**("Borrower)
 And
   **West Coast Capital Group, Inc.** ("Lenders"),
amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated **07/01/04 the** Note, bearing the same date as, and secured by, the property.

Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at <u>**Property Address: 6921 Greenwich Pike Lexington, KY 40511**</u>
In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of 12/01/2018, the current amounts payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is **$45,417.78 consisting** of the unpaid amount(s) loaned to Consumer. There is a total **past due Amount** of $7,544.98 which consists of Unpaid Interest payments at the rate of **5.500%** and late charges and unpaid fees and other fees for a total of **$3,740.91 with a grand total of $56,703.67**

2. **Upon receipt of this fully executed agreement, the lender agrees to modify the Loan. The Borrower acknowledges that the principal and interest payment was calculated based on a 120 months amortization schedule. The Unpaid Principal Balance (UPB) will stay at $45,417.78. Interest will be charged on the Unpaid Principal Balance at the new yearly rate of 5.50% [FIXED].** <u>Upon receipt of the fully executed loan modification agreement which is due by 12/01/2018. The lender agrees to keep the UPB the same at $45,417.78 and lender will be bringing the account contractually current and next due for 12/01/2018. The remaining past due interest and fees and cost and any other fees totalling $11,285.89 will be paid through the BK plan 13.</u>

   <u>**Current UPB agreement Plan:**</u>

   Borrower will be paying on the current UPB $45,417.78. Borrower promises to begin making monthly payments of principal and interest of the new Fixed Rate payment of $492.90 per month beginning on 12/01/2018 which, due and continuing thereafter on the 1st day of each succeeding month until maturity. The modified yearly FIXED rate is 5.50% and will remain in effect until maturity date.

   Borrower acknowledges that the principal and interest payment was calculated based on a 120 month amortization schedule; the loan maturity date will be moved to **12/01/2028** (the "Maturity Date").

   <u>**BK-13 agreement Plan:**</u>

   Borrower promises to begin making monthly payments through the active bankruptcy 13 plan to cover the past due amount of $11,285.89 over the period of the BK plan. Each month payment amount will vary through the plan and payments will start once the plan has been been confirmed. The modified yearly FIXED rate will be 0.00% and will remain in effect until BK payment plan has been paid in full of the amount of $11,285.89 over the period of 5 years through the plan.

   Borrower acknowledges that the principal payment was calculated based on a 60 month amortization schedule; the loan maturity date will be moved to **12/01/2028** (the "Maturity Date")

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without

Page | 1

Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:
   (a)   all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. Of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and
   (b)   all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. Borrower understands and agrees that:
   (a)   All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.
   (b)   All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.
   (c)   Borrower has no right of set-off or counterclaim, or any defense to the obligations of the Note or Security Instrument.
   (d)   Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.
   (e)   All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.
   (f)   Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.
   (g)   Borrower is responsible for property taxes and insurance at all times. If borrower defaults all at any time loan will revert back to original terms on the note.

Page | 2

**West Coast Capital Group, Inc.**

By: _____        _____
      **Lender Signature:**                                          **Date:**

_____        _____
**Borrower: Signature: Carol Gilkey**                        **Date:**

_____        _____
**Borrower's Attorney: Signature: Ryan R. Atkinson**         **Date:**

_____        _____
**Trustee Signature:**                                       **Date:**